**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FT. MYERS DIVISION**

**HELEN ROGERS, on behalf of
BENJAMIN ROGERS, a minor child[1],**

    **Plaintiff,**

**v.**                                           **Case No.  2:05-CV-333-FtM-UA-DNF**

**JO ANNE B. BARNHART,
Commissioner of Social Security,**

    **Defendant.**
_____/

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

This matter is before the Court on the plaintiff's complaint (Doc. #1), seeking review of the final decision of the Commissioner of Social Security of the Social Security Administration ("the Commissioner") denying her claim for social security disability and disability insurance benefits (DIB) pursuant to 42 U.S.C. §405(g).  The Commissioner has filed the Transcript of the proceedings (hereinafter referred to as "TR." followed by the appropriate page number), and the parties have filed legal memorandums.  For  the reasons set out herein, it is respectfully recommended that the decision be **AFFIRMED**.

---

[1] By Order of the Court dated August 24, 2006, [Doc. 19], Helen Rogers on behalf of Benjamin Rogers, a minor child has been substituted as the named Plaintiff in this action due to the death of the original Plaintiff, Susan M. Rogers on June 20, 2006. [Doc. 18-3]. The Plaintiff's cause of death: 1.  Cirrhosis, 2.  Acute Renal Failure.

## I. Social Security Act Eligibility, the ALJ Decision, and Standard of Review

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § § 416(i), 423(d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. § § 404.1505-404.1511. The plaintiff bears the burden of persuasion through Step 4, while at Step 5 the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

On September 10, 2002, plaintiff filed an application for disability insurance benefits [Tr. 48-50]. The Plaintiff alleges an onset of disability on January 1, 2001. [Tr. 48-50, 52]. The Plaintiff timely requested a hearing before an administrative law judge (ALJ). The claim was denied upon application and reconsideration and on February 2, 2005, a hearing was held before Administrative Law Judge (ALJ) Milton J. Carp. [255-284]. The ALJ's decision dated April 1, 2005, found Plaintiff not disabled. [Tr. 12-21]. The Appeals Council denied Plaintiff's request for review on May 11, 2005. [Tr. 10-12]. The ALJ's 2005 hearing decision is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

At Step 1, the ALJ found the plaintiff had not engaged in substantial gainful activity since January 1, 2001. [Tr. 15]. At Step 2, the ALJ found the medical evidence establishes that the Plaintiff has status post fracture of the right ankle, with residual burning sensation in the feet and a history of

alcohol abuse in remission.[2] [Tr. 17]. At Step 3, the ALJ found this impairment did not meet or equal, either singly or in combination with any other impairment, any of the impairments in Appendix 1, Subpart P, Regulations No. 4. (T. 24). At Step 4, the ALJ determined that based upon the medical evidence and his determination that plaintiff's testimony regarding her limitations were not totally credible, he found that the Plaintiff has the residual functional capacity to perform sedentary work through her date last insured of December 31, 2003.

The ALJ found the plaintiff unable to perform her past relevant work as a registered nurse. However, the ALJ found the plaintiff has acquired transferable skills from the skilled work she performed previously in the past and retained the capacity to adjust to other work through her date last insured. [Tr. 20]. Accordingly, the ALJ found the plaintiff was not disabled. The parties agree that the case is ripe for review. [Tr. 20].

## II. Review of Facts and Conclusions of Law

**A.  Background Facts:**

The Plaintiff was born on January 7, 1952 and was fifty-three (53) old on the date of the hearing decision. [Tr. 258]. The Plaintiff has a college education and a degree as a registered nurse. [Tr. 259]. The Plaintiff performed the duties of a registered nurse between 1983 and 2000. [Tr. 58]. Additionally, the Plaintiff has worked in a nursing home, been a nursing supervisor and also a staff nurse. [Tr. 58, 250].

---

[2] The Plaintiff did not raise a mental impairment in her application for disability insurance benefits.

On September 1, 1997, the Plaintiff fell and fractured her ankle.  On September 2, 1997, Dr. P. Ross performed an open reduction internal fixation Trimalleolar fracture subluxation of her right ankle. [Tr. 82-84, 92-93].  The Plaintiff was released from the hospital on September 4, 1997, with Percocet for pain and instructions to keep the right ankle elevated. The Plaintiff complained of continued pain and loss of motion and numbness in the lateral aspect of her foot. On January 13, 1998, her right ankle was evaluated.  Upon examination she had decreased sensory on the dorsum and lateral aspect of her foot with hypersensitivity to palpation over the distal lateral incision as well as over the medial incision.[Tr. 85]. The Plaintiff was advised that the surgery had been successful and that it was possible it might take up to a year's time for her to realize optimal results. [Tr. 85].

On April 8, 1998, Faye H. McDew-Carrington advised by letter to Dr. Julie Keeler [Plaintiff's treating physician], that Plaintiff was receiving physical therapy for her right ankle. "The Plaintiff demonstrates an antalgic gait favoring the right lower extremity with mild to moderate edema".  The Plaintiff was having problems with walking during ambulation and instability in balance when she changed direction while walking.  The Plaintiff was advised that an air cast splint would reduce the swelling and provide stability for the right ankle. [Tr. 93-94].

On March 28, 1998, the Plaintiff completed a Confidential Patient Information form provided by East End Physical Therapy, P.C. . [Tr. 95-96].  The Plaintiff wrote on the  form that her right ankle and left heel were causing her discomfort. The Plaintiff was taking Extra Strength Tylenol for pain and listed panic disorder as a health condition the doctor should be aware of. [Tr. 95-96]

On January 20, 1999, the Plaintiff presented to East End Physical Therapy, P.C., with complaints of discomfort in her elbow. The Plaintiff was prescribed a course of Prednisone. On January 25, 1999, a letter was sent to Dr. Julie Keeler by Hildy L Brown, RPT, advising that the Plaintiff would be seen three times a week for four weeks to have therapeutic exercise. [Tr. 91].

On November 14, 2000, the Plaintiff began treatment with Dr. Ephraim Aguilar for complaints of stomach pain, history of panic disorder and depression; and pain and swelling in her right ankle. The Plaintiff was also experiencing anxiety. The Plaintiff was prescribed Percocet for pain and Xanax 0.125 mg. for her anxiety. [Tr. 130-133]. On November 29, 2000, Plaintiff was diagnosed with chronic pancreatitis. [Tr. 126-127].

On January 3, 2001, The Plaintiff was seen in the emergency room due to shortness of breath and generalized abdominal pain. [Tr. 109]. The Plaintiff was given a chest x-ray. The Findings: "Examination is compared to previous film dated 11/28/00. Left lower lob infiltrate/atelectasis. Small left effusion. Discoid atelectasis right base. Heart size normal. Vascular pattern normal. Impression: Left effusion. Left lower lobe infiltrate." On January 5, 2001, the Plaintiff was admitted to Lee Memorial Hospital due to epigastric pain and a weight loss of fifteen (15) pounds. A CT of the abdomen was performed with contrast and without contrast. "Impression: Small left effusion, left lower lobe infiltrate, follow up until clearing recommended; small perisplenic fluid collection, increased mesenteric markings left upper quadrant abdomen, findings consistent with inflammatory process. This may be related to left colon, splenic flexure region or even tail of pancreas. Clinical correlation with follow up imaging/evaluation advised". The Plaintiff was discharged on January 8,

2001 with a diagnosis of alcoholic pancreatitis and anorexia with weight loss. The Plaintiff was discharged without medications and advised to follow-up with Dr. Brent Myers, her admitting physician. [Tr. 108].

On April 3, 2001, Plaintiff was seen by Dr. Aguilar for swelling and pain in her right ankle. The Diagnosis was post-operative ORIF of the right ankle; chronic pancreatitis; and panic disorder. [Tr. 122-123]. [On July 10, 2001, the Plaintiff presented to Dr. Aguilar again with the same symptoms].

On May 9, 2001, the Plaintiff was assessed by Ruth L. Waters, MA a Licensed Mental Health Counselor. The Plaintiff was referred by the DUI Program. The Plaintiff was diagnosed as: "Alcohol Dependence: Continuous". [Tr. 212-232].

The Plaintiff was treated at the Family Health Center from August 2001 to December 2004. The Plaintiff was treated for on-going complaints of anxiety, hand and foot pain, hypertension, problems sleeping and shortness of breath. The Plaintiff was prescribed Zoloft, Xanax, Carvedilol, Lotrel, Norvasc and Pancrease. On March 6, 2003, the Plaintiff presented with complaints of foot pain. [Tr. 135; 195], On April 10th and April 28th, 2003, the Plaintiff was seen for hypertension. [Tr. 193-194]. On May 27, 2004, the Plaintiff's examination was unchanged and on August 22, 2003, the Plaintiff returned for follow-up after she was hospitalized with pancreatitis. The Plaintiff was referred to Alcoholics Anonymous and was prescribed Pancrease and restarted on Zoloft. [Tr. 193, 194, 192, 189].

**B.    SPECIFIC ISSUES**

    **I.    The ALJ Erred in Finding That The Plaintiff's Mental Impairment is not Severe.**

The Plaintiff contends that the medical evidence shows that the Plaintiff received on going treatment for anxiety, depression and panic attacks. On November 14, 2000, Dr. Aguilar's notes show that the Plaintiff told him she "used to take Zoloft and Xanax due to her anxiety". After examination of the Plaintiff, Dr. Aguilar did prescribe Xanax for her. [Tr. 131-132]. At the hearing the Plaintiff testified that she had stopped working due to the problems with her ankle, depression, anxiety and problems with drinking. [T.r. 261]. The Plaintiff testified she had trouble concentrating, had lost interest in doing things, had trouble completing things and felt overwhelmed. [Tr. 264]. The Plaintiff described problems she had dealing with stress, experiencing panic attacks and that she had even considered not showing up for her hearing that day. [Tr. 265].

The Plaintiff did not list any mental impairment in her disability report as a basis for her disability, she failed to show that she required any on going psychological treatment, and there was no supportive medical evidence provided by a mental health practitioner.[3] Thus, the ALJ specifically addressed the issue of Plaintiff's treatment and found no indication that the Plaintiff required any on going psychiatric or psychological counseling [except for the brief period in 2001] or emergency psychiatric hospital care at any time. [Tr. 18].

---

[3] The record is devoid of any diagnostic tests and laboratory findings to substantiate the existence of a particular medically determinable mental impairment. A medically determinable impairment can only be established by anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

### II. The ALJ Erred in the Hypothetical Question Proposed to the Vocational Expert

The Plaintiff contends that the ALJ did not ask the vocational expert any questions that included her mental limitations resulting from her mental impairment. Thus, the answers provided by the vocational expert did not provide the substantial evidence necessary to make his decision. As determined above, the Plaintiff was unable to establish that she had a severe mental impairment on or before her last date insured of December 31, 2003.

The Plaintiff further contends that the ALJ failed to include a limitation regarding her hand pain. [Pl.'s Br. At 9]. At the hearing, the Plaintiff testified that her hands are discolored and numb, and that she had dropped a glass the night before the hearing. [Tr. 263]. The Plaintiff was examined by Dareld R Morris II, D.O. Board Certified in Pain Management, and Fellow, American Academy of Disability Evaluating Physicians. In May of 2003., Dr. Morris indicated that the Plaintiff had no deficits in grip strength and fine manipulation and could perform activities necessary for daily living. [Tr. 152]. The Plaintiff has failed to provide any medical evidence which suggested that her physical condition caused hand limitations prior to December 31, 2003.

The Plaintiff argues that the ALJ was required to make explicit findings as to the physical and mental demands of the Plaintiff's past work in accordance with Social Security Ruling (SSR) 82-62[4]. [Pl.'s Br. At 9]. The Court finds that the ALJ did obtain the services of a vocational expert and found

---

[4] SSR 82-62 (1983) is an Agency ruling which specifically deals with a claimant's capacity to perform her past relevant work at step 4 of the sequential evaluation.

that the Plaintiff could not perform her past relevant work, and correctly moved on to step 5 of the sequential evaluation process. [Tr. 18]. Further consideration of the physical and mental demands of the Plaintiff's past relevant work is not warranted.

### III.   The ALJ Failed to Consider the Effect of the Plaintiff's Combined Impairments.

The Plaintiff argues that the ALJ's decision did not show the Plaintiff's entire medical condition since he failed to consider all of the Plaintiff's psychological limitations, and her hand and foot pain. Further, the ALJ failed to consider the mental requirements of work and that he failed to order a consultative psychological examination to clarify the nature of the Plaintiff's depression.

The regulations indicate that the completion of a Psychiatric Review Technique Form (PRTF) is not required unless there is a medially determinable mental impairment. 20 C.F.R. § 404.1520a(b)(1). The Plaintiff did not establish that she had a mental impairment prior to the expiration of her insured status as determined above.

The Commissioner has a duty to consider the combined effects of all impairments that render the claimant disabled. Jones v. Department o;f Health and Human Services, 941 F.2d 1529, 1533 (11th Cir. 1991). The ALJ discussed all of the Plaintiff's impairments, including the impairments that the Plaintiff did not allege were disabling, which shows consideration of the combination issue. Therefore, the ALJ carefully considered the combined effect of the Plaintiff's impairments.

**IV.     The ALJ Failed to Comply With Social Security Ruling 82-62**

The Plaintiff contends that the ALJ failed to comply with Social Security Ruling ("SSR") 82-62. Social Security Ruling (SSR) 82-62, <u>Titles II and XVI: A Disability Claimant's Capacity to do Past Relevant Work</u>. <u>In General</u>:    To find that an individual has the capacity to perform a past relevant job, the determination or decision must contain among the findings the following specific findings of fact:

1.      A finding of fact as to the individual's RFC.

2.      A finding of fact as to the physical and mental demands of the past job/occupation.

3.      A finding of fact that the individual's RFC would permit a return to his or her past job or occupation.

The ALJ determined the Plaintiff was a younger individual between the ages of 48 and 49 on January 1, 2001, her alleged disability onset date. The Plaintiff had more than a high-school education and her skilled past relevant work as a nurse involved transferable skills to sedentary work. According to the vocational expert's testimony, The Plaintiff had technical knowledge of the use of medical instruments and supplies, of record-keeping and of planning the work of others. The VE also testified there were sedentary occupations to which the Plaintiff's skills could be transferred, i.e., emergency room triage nurse, telephonic-nurse case manager, out-patient admitting clerk or in-patient admitting clerk. The ALJ detemined that there were significant numbers of positions that the Plaintiff was able to adjust to at the sedentary level in the national economy through December 31, 2003. [Tr. 18].

## V.  CONCLUSION AND RECOMMENDATION

For the foregoing reasons, the ALJ's decision is consistent with the requirements of law and supported by substantial evidence.  Therefore, It is recommended that a judgment should be entered pursuant to sentence four of 42 U.S.C. §405(g) **AFFIRMING** the decision of the Commissioner.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten days from the date of its service shall bar an aggrieved party from attaching the factual findings on appeal and a *de novo* determination by a district judge.  *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72; *see also* Fed.R.Civ.P. 6; M.D. Fla. R. 4.20.

**DONE** and **ENTERED**  in Chambers at Fort Myers, Florida, this 12th   day of   September 2006.

_____
DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
The Honorable John E. Steele,
United States District Judge

Susan Roark-Waldron, A.U.S.A.
Roberta D. Kushner, Esquire